IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Phillip Morris Washington,   ) | |
|     Petitioner,   ) | |
| ) | |
| v.   ) | 1:08cv123 (GBL/TRJ) |
| ) | |
| Warden Everett,   ) | |
|     Respondent.   ) | |

FILED
NOV 14 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

THIS MATTER is before the Court on respondent Everett's Motion to Dismiss petitioner Washington's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case concerns the constitutionality of petitioner's felony convictions entered on a jury verdict in the Circuit Court for the County of Stafford, Virginia, for malicious wounding after having been twice convicted of a violent felony, and for malicious wounding during commission of a felony. The issue before the Court is whether the Supreme Court of Virginia's findings that petitioner received effective assistance of counsel were contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. As the Supreme Court of Virginia's holdings with respect to all of petitioner's ineffective assistance of counsel claims were neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts, petitioner's claims will be dismissed.

### I. Background

On January 15, 2002, Washington was found guilty of malicious wounding during the course of a felony and malicious wounding after having been convicted of two violent felonies.

He was sentenced to life in prison, plus twelve months in jail and a $500 fine. Washington filed his notice of appeal to the Court of Appeals of Virginia on January 22, 2002. The petition was dismissed on May 9, 2002. On April 2, 2003, Washington filed a petition for a writ of habeas corpus in the Circuit Court for the County of Stafford, alleging ineffective assistance of counsel. The sole claim raised in the petition was whether Washington could pursue a delayed direct appeal of his criminal conviction to the Court of Appeals of Virginia due to his counsel's ineffective assistance. On April, 24, 2003, the Circuit Court for the County of Stafford found that Washington's right to a direct appeal was denied, and ordered the Commonwealth to move for leave for Washington to pursue a delayed appeal from the judgment of the circuit court. Washington v. Braxton, CL03000147-00 (Va. Cir. Ct. Apr. 24, 2003). Washington filed his second appeal in the Court of Appeals on July 8, 2003. The court granted his petition, reversed Washington's conviction, and remanded the case on October 26, 2004. Washington v. Commonwealth, 44 Va. App. 157, 604 S.E.2d 92 (2004). The Commonwealth filed a petition for rehearing en banc on November 8, 2004, and following the rehearing, the panel decision was reversed and Washington's conviction was affirmed. Washington v. Commonwealth, 46 Va. App. 276, 616 S.E.2d 774 (2005). Washington then appealed to the Supreme Court of Virginia on September 8, 2005, and the Court affirmed the Court of Appeals' en banc decision on September 15, 2006.

On March 19, 2007, Washington filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. The petition was refused on September 21, 2007. Washington then filed a petition for rehearing on October 5, 2007, which also was refused on November 8, 2007. Washington filed the instant federal habeas corpus petition on February 11, 2008, along with a

Motion for Entertainment of Writ of Habeas Corpus.[1] In his petition, Washington alleges fifteen claims of ineffective assistance of counsel, as follows:

1. Counsel failed to make "consultation visits" in order to "build an adequate strategy defense, and learn information to impeached [sic] the alleged victim."

2. Counsel failed to assert petitioner's Sixth Amendment right to a speedy and public trial.

3. Counsel failed to object "to the Commonwealth's failure to notify the petitioner and counsel, 30 days prior to trial, of its intention to introduce evidence on prior history as required under [Va. Code Ann.] § 19.2-297.1."

4. Counsel failed "to subject the Commonwealth's case to a meanful [sic] adversarial test pursuant to [Va. Code Ann.] § 19.2-297.1 Mandatory Life Sentence, and allowing a defected [sic] order as a [sic] element."

5. Counsel failed to file a motion to suppress or object in limine to the Commonwealth's use of a knife with blood on it, which was not tested by a DNA forensic analyst to prove "its culpability and connection to [petitioner's] trial."

6. Counsel failed to call for the assistance of a DNA expert in forensic science to give "a fair assessment on who [sic] blood was found on the tip of the alleged knife found by the K9 dog."

7. Counsel failed to call for the assistance of an expert witness "in the medical field for the assessment of laceration wounds."

8. Counsel failed to protect petitioner from potential bias by allowing Juror Number 1, whose brother is a judge, to be a member of the jury.

9. Counsel failed to protect petitioner from potential bias by allowing certain jurors who were "long term friends of Stafford County Police department

---

[1] Washington's Motion requests that the Court "grant relief sought in § 2254 Writ of Habeas Corpus . . . ." In addition to his requested relief, petitioner includes a statement on jurisdiction, a statement of position, argument and authority, and attaches two exhibits. For the purposes of considering petitioner's federal claims, as noted in the Court's February 29 Order, this Motion is construed as a supplemental brief to his petition.

  and Prince Williams [sic] County Police department" to be members of the jury.

10. Counsel failed to object to the introduction of petitioner's "prior history felonies [sic] charges in open argument."

11. Counsel failed to assert on appeal a "preserved objection made in limine in reference to defected [sic] on prior conviction."

12. Counsel failed to assert on appeal a "preserved objection . . . in regards to the Petitioner being placed in Shackles before and at sentencing phase of his trial in front of a bifurcated Jury."

13. Counsel failed to assert on appeal a "preserved objection . . . in reference to the trial courts [sic] denial of request for a lesser included offense instruction, [of] Assault and Battery."

14. Counsel failed to object to the Commonwealth "reinstructing the Jury and resentencing the Petitioner after the Juries [sic] Verdict were [sic] unanimously Finalized."

15. Counsel failed to attack the sufficiency of the evidence on appeal.

On June 20, 2008, respondent filed a Rule 5 Answer and a Motion to Dismiss. Washington was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 28 F.2d 309 (4th Cir. 1975), however, he has not filed any reply with this Court. This case is now ripe for disposition.

## II. Procedural Default

As discussed in the Court's February 29 Order, many of Washington's claims are barred from federal review as a result of the Supreme Court of Virginia's finding of procedural default. A state court's finding of procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met. Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state

court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris, 489 U.S. at 259. Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Fourth Circuit has held consistently that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996). When these two requirements are met, federal courts may not review the barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Muncy, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In this case, the Supreme Court of Virginia dismissed Claims 1-10 and 14 of Washington's second habeas corpus petition as procedurally defaulted pursuant to Virginia Code § 8.01-654(B)(2) because Washington had knowledge of the facts giving rise to his claims at the time that he filed his previous petition. Additionally, the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision. See, e.g., Pope, 113 F.3d at 1372; Gray, 99 F.3d at 163. Thus, Claims 1-10 and 14 of Washington's

present petition are procedurally defaulted and barred from review by this Court, absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Harris, 489 U.S. at 260.

Absent a showing of cause and prejudice or actual innocence, the only miscarriage of justice recognized as sufficient to excuse procedural default, this Court may not review the barred claims. See Roach v. Angelone, 176 F.3d 210, 211 (4th Cir. 1999). To establish cause for the procedural default, a petitioner must demonstrate that some "objective factor" external to his defense impeded him from complying with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To avail himself of the actual innocence exception as a procedural gateway to asserting an otherwise defaulted claim, a petitioner must "offer 'new reliable evidence . . . that was not presented at trial,' and 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Washington first argues that the procedural bar against successive petitions should not apply because of an amendment of the relevant Virginia Code section, § 8.01-654(B)(2), which was adopted on March 26, 2005. The amended language provides that "the provisions of this section shall not apply to a petitioner's first petition for a writ of habeas corpus when the sole allegation of such petition is that the petitioner was deprived of the right to pursue an appeal from a final judgment of conviction or probation revocation . . . ." Va. Code Ann. § 8.01-654(B)(2). Washington argues that although the statute was amended after he submitted his first petition seeking a belated appeal to the circuit court, the amendment should apply to his case retroactively. Washington made this argument in his petition to the Supreme Court of Virginia,

which rejected it sub silentio. The Court proceeded to find that Claims 1-10 and 14 of Washington's petition were barred by § 8.01-654(B)(2) and Dorsey v. Angelone, 261 Va. 601, 544 S.E.2d 350 (2001), noting that the facts of the claims were known prior to Washington's submission of his first petition to the state circuit court, and therefore the claims should have been raised in that earlier proceeding.

Washington also argues that he should be excused from the procedural bar because he has shown sufficient cause and prejudice, or a fundamental miscarriage of justice. Washington contends that because his attorneys failed to bring his appeal properly, he had no choice but to file his first habeas petition to the state circuit court, thus resulting in the current procedural bar. He also claims that at the time he filed that petition, he was not aware of the facts necessary to raise Claims 1-10 and 14 in his petition. While "failure to file a requested appeal is per se ineffective assistance of counsel, irrespective of the possibility of success on the merits," United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995), even with cause Washington has not shown sufficient prejudice. Regardless of whether the law subsequently was changed, at the time Washington filed his first petition the Virginia Code required that he present all allegations known to him at the time of filing. His failure to do so, and not counsel's failure to properly file the appeal, resulted in the current procedural bar. Furthermore, the Supreme Court of Virginia expressly found that the facts necessary to bring these claims at the time of the first petition were known prior to petitioner's filing, thereby rejecting his argument that he could not actually have brought those claims at the time of the first petition.

Finally, Washington claims that a fundamental miscarriage of justice would result from the procedural bar, invoking the actual innocence standard. However, in his petition,

7

Washington fails to put forth any "new reliable evidence" that was not presented at trial, nor does he show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Royal, 188 F.3d at 244. Therefore, all of Washington's arguments in support of not applying the procedural bar must fail, and Claims 1-10 and 14 will be dismissed.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410.

### IV. Discussion

The Court finds that each of Washington's remaining claims of ineffective assistance of appellate counsel, Claims 11, 12, 13, and 15, should be dismissed, because the Supreme Court of

Virginia's dismissal of petitioner's claims was neither contrary to, nor an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), which governs such claims, nor was it based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d). To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. The Strickland test applies to appellate counsel. See Burger v. Kemp, 483 U.S. 776, 781 (1987).

To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Thus, a petitioner must prove that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In the context of appellate counsel, effective assistance "does not require the presentation of all issues on appeal that may have merit," and the court must "accord counsel the presumption that he decided which issues were most likely to afford relief on appeal."[2] Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008).

Furthermore, even if counsel committed some error, including a "professionally

---

[2] The United States Supreme Court has noted the deference given to appellate counsel, holding that appellate counsel is not required to raise every nonfrivolous claim on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). The Court also has held that "[n]otwithstanding Barnes, it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000).

unreasonable" error, the judgment may only be set aside if the error had an actual effect on the judgment. Strickland, 466 U.S. at 691. Thus, for a court to find counsel's performance constituted ineffective assistance, "any deficiencies in counsel's performance must be prejudicial to the defense . . . ." Id. at 692. It is not enough for a petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (explaining that "a reasonable probability is a probability sufficient to undermine confidence in the outcome"). In regards to appellate counsel, failure to raise an issue on appeal is ineffective only if that failure "fell below an objective standard of reasonableness and, but for that failure, [petitioner] would have prevailed in his appeal." Lawrence, 517 F.3d at 709.

Ultimately, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. A successful petition must show both, as they are "separate and distinct elements" of the claim. Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Moreover, a court does not need to review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

<u>Claim 11: Failure of counsel to raise on appeal the use of a defective order to prove Washington's prior conviction.</u>

In Claim 11, Washington argues that counsel's failure to raise on appeal the use of a defective order at trial to prove Washington's prior conviction constituted ineffective assistance of appellate counsel. Pet. 37. Washington claims that counsel were aware that the

10

Commonwealth intended to, and in fact did, use a defective order to convict him of malicious wounding after having been twice convicted of a violent felony, and that they failed to raise this "preserved objection" on appeal. Pet. 37-38. At the first trial on October 31, 2001, the Commonwealth had planned to introduce an allegedly defective order to prove one of Washington's convictions. Trial Tr. 90-94, Oct. 31, 2001. Washington's counsel objected to the use of the defective order, the court sustained the objection, and the Commonwealth's error ultimately resulted in a mistrial. Trial Tr. 94-96, Oct. 31, 2001.

At Washington's second trial, which took place on January 14, 2002, four orders were admitted into evidence, and none were objected to by Washington's counsel.[3] Trial Tr. 132-36, Jan. 14, 2002. Washington's counsel specifically noted for the record that the conviction order that previously was defective had been cured, and the document was certified properly for use at trial. Trial Tr. 134-35, Jan. 14, 2002. Furthermore, the record includes copies of the certified orders used to prove Washington's prior convictions at trial, and demonstrates that the conviction orders used at Washington's trial were not defective. Had Washington's counsel raised the issue on appeal, it would have been frivolous, and would not have resulted in a different outcome. Thus, rejection of this claim by the Supreme Court of Virginia was not contrary to, nor an unreasonable application of Strickland, and this claim will be dismissed.

---

[3] Each of the four documents were acknowledged by Washington's counsel as being properly certified for use at trial. See Trial Tr. 133 (Exhibit One), 134-35 (Exhibit Two), 135 (Exhibits Three and Four), Jan. 14, 2002. Although Washington argues that there was a "preserved objection" regarding the use of a defective order, he is mistaken. Pet. 37. Counsel specifically stated that there were no objections to the documents being properly certified, and only preserved the objection to the motion in limine that had been heard prior to trial. Trial Tr. 133, Jan. 14, 2002. That motion, heard on January 11, 2002, dealt only with whether or not the evidence of Washington's prior felony convictions should be presented during the guilt phase or the sentencing phase of Washington's bifurcated trial. Mot. Tr. 7-8, Jan. 11, 2002.

11

### Claim 12: Failure of counsel to raise on appeal the placement of Washington in shackles before and at sentencing.

In Claim 12, Washington argues that counsel's performance was ineffective because of a failure to raise on appeal a "preserved objection" to the placement of shackles on Washington, "without cause, in front of a bifurcated jury." Pet. 40. He claims that on two occasions, counsel brought this to the attention of the trial court, and counsel's failure to raise the matter on appeal "prejudice the Petitioners [sic] entire appeal proceedings." Pet. 41. Washington alleges that on two separate instances he was placed before the jury in shackles. The first instance took place after the conclusion of the guilt phase and before the sentencing phase officially began, after the jury had been brought into the courtroom. Washington's counsel immediately moved to have the shackles removed, doing so outside the hearing of the jury and without Washington approaching the bench. Trial Tr. 63, 65-70, Jan. 15, 2002. The court then had the jury leave the courtroom, and they did not reenter until Washington's shackles were removed. Trial Tr. 70-71, Jan. 15, 2002. Therefore, the record makes it appear that the jury was unaware that Washington was shackled at that point in time.[4]

On the second instance, before the jury returned with its sentence, Washington was placed in shackles, which remained on when the jury entered the courtroom. Trial Tr. 100, Jan. 15, 2002. The jury announced a sentence that included a life sentence, which was accepted by the

---

[4] This particular instance was raised again by Washington's counsel after the second instance took place. Washington's counsel noted on the record that it may have been possible that at some point, Washington stood up and members of the jury may have heard the chain on his shackles. Counsel, at the court's inquiry, stated that aside from Washington's conjecture regarding a specific juror whom he believed had looked in his direction at the time he stood up in his shackles, there was no other indication that the jury was aware that he had shackles on while seated at the table. Trial Tr. 114, Jan. 15, 2002.

court, as well as five years imprisonment and a $500 fine, which were improper under Virginia law. Trial Tr. 106, Jan. 15, 2002. As a result, the jury was required to return to deliberations to correct the error, meaning that prior to announcing a fully finalized sentence the jury may have seen Washington in his shackles. Trial Tr. 105-07, Jan. 15, 2002. After returning from its second round of deliberations, the jury altered the part of its sentence that was in error to twelve months in jail, with time served, and a $500 fine, a sentence more favorable to Washington than the jury's original sentence. Trial Tr. 125, Jan. 15, 2002.

In this case, the record does not support the argument that appellate counsel's performance was deficient in failing to raise a claim regarding Washington's shackles. Based on the record, Washington suffered no prejudice during his trial or on appeal based on either possible instance of the jury seeing him in shackles. At the time of the first incident, prior to sentencing, even assuming the jury saw the shackles on Washington's ankles,[5] Washington had already been found guilty and been remanded to the custody of the sheriff. Trial Tr. 117, Jan. 15, 2002. Therefore, it is apparent that the shackles had no bearing whatsoever on Washington's conviction. Moreover, even if the jury saw the shackles during the second instance, after it announced the improper sentence, it proceeded to arrive at a corrected sentence that was more favorable to Washington, and therefore no inference of prejudice was created. Accordingly, appellate counsel could have perceived no prejudice as a result of the shackles in the trial record, and therefore were not required to raise the matter on appeal. Since raising such an issue would

---

[5] It does not appear from the transcript that the jury actually did see the shackles on Washington's ankles. While Washington's counsel stated that from the jury box "something" was visible around defendant's ankle, Trial Tr. 113, Jan. 15, 2002, the court noted that unless Washington made a specific attempt to make his shackles visible to the jury, they could not otherwise have been seen. Trial Tr. 117, Jan. 15, 2002.

not have resulted in reversal of Washington's conviction or sentence, he suffered no prejudice when a claim challenging the shackles was omitted from his direct appeal. Rejection of this claim by the Supreme Court of Virginia was not contrary to, nor an unreasonable application of Strickland, and this claim will be dismissed.

Claim 13: Failure of counsel to raise on appeal the trial court's denial of Washington's request for a lesser included offense jury instruction.

In Claim 13, Washington argues that counsel were ineffective because they failed to raise on appeal the "preserved objection" to the court's denial of a defense request for a lesser included offense instruction. Pet. 42-43. Washington claims that "the jury was entitled to view a less [sic] included offense of assault and battery, because the Commonwealth's accusation of malicious wounding was merely an opinion." Pet. 43. Washington argues that "the Appellate Counsel prejudice [sic] Petitioners [sic] entire appeal" by failing to raise the issue on appeal. Id.

As with Claim 12, counsel were entitled to make strategic decisions regarding which claims to bring on appeal, and which they would not raise. In reviewing the record, there is little to suggest that, had counsel brought such an argument on appeal, it could have been done in good faith. First, a lesser included offense of unlawful wounding was permitted by the court, although the lesser included offense of assault and battery was not. Trial Tr. 368, Jan. 15, 2002. The jury nonetheless found Washington guilty of malicious wounding, the principal offense charged, thus rejecting the possibility that he acted without malice. The evidence in the record supported this conclusion, as will be discussed below. There is nothing in the record to suggest that the jury would have found Washington guilty of any other lesser included offense had it been given that option. As a result, rejection of this claim by the Supreme Court of Virginia was not contrary to,

nor an unreasonable application of Strickland, and this claim will be dismissed

Claim 15: Counsel failed to raise on appeal the sufficiency of the evidence.

In Claim 15, Washington argues that counsel were ineffective for failing to attack the sufficiency of the evidence on appeal. Pet. 47. Washington claims that the Commonwealth failed to prove all elements of the malicious wounding charge at trial, and specifically that the following evidence was necessary: (1) the victim's nurse's testimony regarding the victim's condition on her arrival at the hospital; and (2) a DNA expert to give analysis on whose DNA was found on the knife presented at trial. Pet. 48. In reviewing the sufficiency of the evidence, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979). Under Virginia law, defendants are guilty of malicious wounding if they "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill . . . ." Va. Code Ann. § 18.2-51.

Here, the victim identified Washington as the perpetrator, and testified that he threatened to kill her, held a knife to her throat, cut her throat, tried to suffocate her with a pillow, and repeatedly told her she was going to die. Trial Tr. 227-28, 250, Jan. 15, 2002. Additionally, the Commonwealth had certified copies of the orders in Washington's prior felonies, necessary to convict Washington of malicious wounding after having been twice convicted of violent felonies. Therefore, the evidence was sufficient under Jackson, and Washington suffered no prejudice when counsel failed to raise this issue on appeal. As a result, the Supreme Court of Virginia's rejection of this claim was not contrary to, nor an unreasonable application of Strickland, and this

claim will be dismissed.

## V. Conclusion

Because petitioner has failed to demonstrate that counsel's performance was deficient, and has also failed to prove that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different, all of his claims of ineffective assistance of counsel are without merit, and his petition will be dismissed. An appropriate Order shall issue.

Entered this __14th__ day of __November__ 2008.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge